UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DISTRICT OF COLUMBIA,<br><br>Plaintiff,<br><br>v.<br><br>CHIKE A. IJEABUONWU, et al.,<br><br>Defendants. | Civil Action No. 09-0249 (PLF) |

MEMORANDUM OPINION

This matter is before the Court on plaintiff's motion for summary judgment ("Mot."), defendants' opposition and plaintiff's reply. After careful consideration of the parties' papers, the relevant statutes and case law and the oral argument presented by counsel for the parties on July 1, 2009, the Court will grant plaintiff's motion for summary judgment for the reasons explained below.

I. BACKGROUND

Plaintiff, the District of Columbia, filed suit on February 9, 2009 for attorneys' fees under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 et seq., ("IDEA") on the ground that the defendants initiated and then continued litigation that was frivolous, unreasonable and without foundation. The parties agree about the material facts.[1] Defendants,

---

[1] Defendants did not file a response to plaintiff's statement of material facts as to which there is no genuine dispute. Nor did they file any affidavits or declarations. Therefore pursuant to Local Civil Rule 7(h)(1) the Court will treat the facts identified by plaintiff as admitted. See L. Cv. R. 7(h)(1).

Chike A. Ijeabuonwu and the Law Offices of Chike A. Ijeabuonwu, LLC, represent a District of Columbia Public Schools ("DCPS") special needs student, K.J., who, during the 2007-08 school year attended a full time private school pursuant to his Individualized Education Program ("IEP"). See Mot., Plaintiff's Statement of Material Facts as to Which There is No Genuine Dispute ("Pl. Facts") ¶¶ 2-3. On April 19 and 25, 2007, DCPS funded a psychoeducational evaluation of K.J.'s abilities and issued a report diagnosing K.J. with Depressive Disorder NOS, Oppositional Disorder NOS, and a Learning Disorder NOS in math and reading. See id. ¶¶ 4-5. On July 1, 2008, K.J.'s school convened a Multidisciplinary Evaluation Team ("MDT") meeting to evaluate K.J.'s educational progress. See id. ¶ 6. The MDT maintained K.J.'s disability classifications and prescribed various specialized instruction and services. See id. ¶¶ 7-8. It also developed a "Student Evaluation Plan" ("SEP") that recommended further evaluations to rule out the possibility of ADHD. See id. ¶ 9. DCPS was not represented at the MTD meeting. See id. ¶ 11. Anisa Hicks, K.J.'s parent and legal guardian, also was not present. See id. ¶ 12.

It is undisputed that DCPS did not conduct the evaluations recommended by the MDT. On September 9, 2008, defendants therefore filed a due process complaint on behalf of K.J. and Ms. Hicks with the Student Hearing Office alleging that DCPS failed to conduct the evaluations recommended at the July 1, 2008 MDT meeting. See Pl. Facts ¶ 13. On September 18, 2008, DCPS faxed a letter to Mr. Ijeabuonwu, signed by Richard Nyankori, the Special Assistant to the Chancellor, authorizing Mr. Ijeabuonwu's client, Ms. Hicks, to obtain an independent comprehensive psychological evaluation and an independent psychiatric evaluation of K.J. at DCPS's expense. See id. ¶ 14; see also Mot., Ex. E at 2. Defendants did not immediately inform Ms. Hicks of this letter or otherwise act on it. See Pl. Facts ¶ 27.

On September 24, 2008, the parties appeared for a prehearing conference and on October 14, 2008, an administrative due process hearing was convened before Hearing Officer Terry Banks. See Pl. Facts. ¶¶ 16, 19, 22. Ms. Hicks testified at the hearing that she was not aware that DCPS had authorized the independent evaluation after the due process complaint was filed but before the hearing. See id. ¶ 27. On October 24, 2008, the hearing officer issued a decision dismissing the due process complaint on the grounds that (1) the evaluations recommended by the MDT appeared unnecessary; (2) there was no evidence that DCPS was ever invited to the MDT meeting or informed of the recommended evaluations; (3) the recommended evaluations would have had no meaningful impact on K.J.'s educational program because K.J.'s disability classification was not in dispute and he was authorized for the maximum level of services available for a child with his level of disability at the most restrictive possible placement short of a residential placement; and (4) the issue of the three evaluations was mooted by DCPS's prompt authorization of an independent psychological evaluation, which encompassed all the criteria recommended in the evaluations by the MDT. See Mot., Ex. A ("Hearing Officer Decision") at 4-5. The hearing officer also concluded that defendants filed the complaint without foundation and continued to litigate after it was apparent that the complaint had become groundless. See id. at 5-6. K.J.'s counsel did not appeal the hearing officer's decision. The District of Columbia sued for attorneys' fees in this Court on February 9, 2009.

## II. STANDARD OF REVIEW

Summary judgment may be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits [or declarations] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." Holcomb v. Powell, 433 F.3d at 895 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248). An issue is "genuine" if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Holcomb v. Powell, 433 F.3d at 895. When a motion for summary judgment is under consideration, "the evidence of the non-movant[s] is to be believed, and all justifiable inferences are to be drawn in [their] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. Potomac Electric Power Co., 447 F.3d 843, 849-50 (D.C. Cir. 2006). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving [parties], there is 'no genuine issue for trial.'" Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). As noted, in this case defendants have provided no affidavits, declarations or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). In fact, the defendants largely agree with plaintiff on the facts. The question is whether on the uncontested facts plaintiff is entitled to judgment as a matter of law.

## III. DISCUSSION

Plaintiff argues that it is entitled to attorneys' fees based on 20 U.S.C. § 1415(i)(3)(B)(i)(II), which gives the Court discretion to award reasonable attorneys' fees

> to a prevailing party who is a State educational agency or local educational agency against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation . . . .

Id. Because the statute provides for an award of fees to a prevailing party "[i]n any action or proceeding," 20 U.S.C. § 1415(i)(3)(B), attorneys' fees may be awarded both for time spent litigating either at the administrative level or in court. See A.R. v. New York City Dep't of Educ., 407 F.3d 65, 75 (2nd Cir. 2005). Plaintiff argues that the due process complaint was frivolous, unreasonable, or without foundation when it was filed because there was no evidence that K.J. was being denied a free appropriate public education ("FAPE").[2] Plaintiff also argues that defendants continued to litigate this matter after the litigation became frivolous, unreasonable, or without foundation because the September 18, 2008 letter from Dr. Nyankori mooted defendants' clients' complaint.

The first question is whether DCPS can be considered a prevailing party within the meaning of the statute. Determining whether a plaintiff is a "prevailing party" entitled to attorneys' fees usually is a relatively straightforward decision. Courts are guided by the Supreme Court's holding in Buckhannon Board and Care Home, Inc. v. West Virginia Department of

---

[2] DCPS argues that IDEA claims based on asserted procedural failings — such as an alleged failure to conduct additional evaluations — are only viable if the procedural violation affects the student's substantive rights. See Lesesne v. District of Columbia, 447 F. 3d 828, 834 (D.C. Cir. 2006).

Health and Human Resources, 532 U.S. 598, 604 (2001), that to be a prevailing party one must obtain a judgment on the merits or, in the case of a settlement, "a judicially sanctioned change in the legal relationship of the parties." It is less clear, however, what is required to find that a *defendant* is a prevailing party (as DCPS was in the administrative hearing). See District of Columbia v. Jeppsen, 514 F.3d 1287, 1290 (D.C. Cir. 2008) ("a defendant might be as much rewarded by a dispositive order that forever forecloses the suit on a procedural or remedial ground as by a favorable judgment on the merits."). While the courts have not agreed post-Buckhannon whether a dismissal for want of jurisdiction will suffice, at the least a defendant is considered a prevailing party for the purpose of attorneys' fees if it has succeeded on the merits of the issue or issues to be litigated. See id. at 1290-91.

In this case, in addition to finding that the issue of the evaluations was mooted by the September 18, 2008 letter, the hearing officer ruled that the defendants "failed to meet [their clients'] burden of proving that DCPS was notified of the SEP and knowingly ignored the MDT's recommendation to complete the three evaluations." Hearing Officer Decision at 4. He also concluded that K.J. "suffered no educational harm as a consequence of the evaluations not having been conducted." Id. at 4-5. The time for appeal of that decision to this Court has passed without an appeal having been taken by the defendants on behalf of their clients; that decision therefore is final. Because the hearing officer ruled for plaintiff on the merits as well as on the issue of mootness, the Court finds that DCPS is a prevailing party for the purpose of the award of attorneys' fees. See District of Columbia v. Jeppsen, 514 F.3d at 1291 (finding that a decision in defendant's favor both on the merits and on mootness makes a defendant a prevailing party for the purpose of attorneys' fees); see also A.R. v. New York City Dep't of Educ., 407 F.3d at 76 (a

hearing officer's decision constitutes an "administrative imprimatur" for the purpose of determining prevailing party status).

The next question is whether defendants, Mr. Ijeabuonwu and his law firm, filed "a complaint . . . that [was] frivolous, unreasonable, or without foundation," or whether they "continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation." See 20 U.S.C. § 1415(i)(3)(B)(i)(II). The Court will treat defendants' original filing of the due process complaint as having been made in good faith. After all, when defendants filed the due process complaint on September 9, 2008, DCPS had failed to provide the evaluations recommended for K.J. by the MDT two months earlier, on July 1, 2008, and the new school year had begun. The Court will assume that this situation provided defendants with a sufficient foundation to file the administrative complaint on behalf of K.J.

It was *not* reasonable, however, for defendants to have proceeded through the administrative process after they received the September 18, 2008 letter from Dr. Nyankori. In that letter DCPS authorized evaluations that encompassed what the MDT had recommended and agreed to reimburse the reasonable and documented fees for the evaluation. In other words, the letter provided all of the essential relief that defendants sought for their clients. Although defendants raised various other requests for relief in their administrative due process complaint, they did not pursue any of these other requests at the hearing. As the hearing officer stated: "The only issue before the Hearing Officer is DCPS' alleged failure to conduct psychological, educational, and social history evaluations that were ordered by the MDT on July 1st." Hearing Officer Decision at 4. Rather than arranging for K.J. to receive the evaluations, however, defendants continued with the administrative hearing, even though *no substantive disputes*

*remained* between them and DCPS and no further relief could be provided. Thus, continuing with the litigation was both unreasonable and without foundation. See Amherst Exempted Village School Dist Bd. of Educ. v. Calabrese, Civil Action No. 07-0920, 2008 WL 2810244 at *14 (N.D. Ohio 2008) (awarding attorneys' fees to local educational agency that was the defendant in an administrative hearing on the ground that the parent raised no substantive challenge to the student's placement and education at the hearing).

At oral argument before this Court, counsel for the defendants suggested that the September 18, 2008 letter was inadequate because it shifted the burden for conducting the evaluation from DCPS onto the parent and required her to make the initial payment (subject to later reimbursement) for a service she may not have been able to afford. Defendants could have addressed these concerns by contacting counsel for DCPS at the time, but inexplicably did not do so.[3] The record also shows that defendants did not raise any such challenge at the administrative hearing, which reveals this argument for the *post hoc* rationalization that it so obviously is. If defendants had these, or other, concerns about the adequacy of the September 18, 2008 letter to meet their clients' needs, they could have requested that the administrative hearing be held in abeyance and discussed those concerns with counsel for DCPS in order to resolve them cooperatively. This would have been the most reasonable course of action, particularly because DCPS and the defendants were in agreement that the evaluations at DCPS's expense were appropriate. It was unreasonable for defendants to continue adversarial litigation up to and through the administrative due process hearing when there were *no substantive disputes left to*

---

[3] Of course, defendants would not have known whether the parent could afford to make the initial payment since they never advised her of the proposal made in the September 18, 2008 letter.

*litigate*. Doing so wasted the time of the hearing officer and of counsel for DCPS, and it ultimately delayed the provision of relief for K.J. Defendants' behavior was unreasonable and without foundation.

The Court therefore, will exercise its discretion to award attorneys' fees to DCPS for the legal work its lawyer did after the September 18, 2008 letter was issued. According to his declaration, Daniel Kim, the attorney for the District, spent 6.85 hours working on the matter after September 18, 2008. Based on the rate of $150 per hour for Mr. Kim, which defendants do not challenge, plaintiff is due $1027.50. An Order to accompany this Memorandum Opinion will issue this same day.

/s/________________________
PAUL L. FRIEDMAN
United States District Judge

DATE: July 8, 2009